Judge Owsley,
delivered the opinion of the Court.
This is an appeal from a decree, dismissing n. bill, which was exhibited by Harris against John B. Amos &lc. in the circuit court. Harris appears to have previously executed a note to John B. Amos, for $144 65, upon which note suit was brought, and judgment at Jaw recovered by Amos against him, and the object of the bill is to be relieved from the judgment, by having applied to its satisfaction, debts which are owing him by Ransom Amos,
Allegations of Harris’ bill.
Answer of J. B. Amos.
The bill alleges, that after the debts 'which arei owing by R. Ataos to Harris were created, a certain Irvin Morris became indebted to R. Amos, in the sum of three hundred dollars by note, and R. A-xrios being in failing circumstances, Harris, for the purpose of securing the debts owing to him by said Amos, made a contract with Morris, by which he undertook to pay the three hundred dollars for which Morris was bound to Amos; That the note of Morris to R. Amos, was assigned by the latter, to John B. Amos, and being applied to by him for the purpose, Harris lifted the note of Morris, and executed the one upon which the judgment at law was recovered to John B. Amds, it being at the same time understood and agreed bétwéen Harris and John B. Amos, that if the latter thereafter purchased from Ransom Amos, a certain negro boy, he would satisfy the debts owing to Harris by said Ransom Amos, and deliver up the note then executed by Harris, and that the said John B. Amos, did afterwards purchase the negro boy from Ransom Amos, and now refuses to credit Harris with the debts or any part thereof, which are owing him by said Ransom Amos. The bill also alleges fraud and collusion between John B. Amos and Ransom Amos, and changes the latter with having assigned the note on Morris to ther former, not for a valuable consideration, but in trust, for the use and benefit of Ransom, who has finally became utterly insolvent. The bill asked for, and obtained an injunction, and prayed for the appropriate relief &c.
The execution of the note upon which the judgment at law was obtained, is admitted by John B. Amos to have been in consideration of the note of Morris, which had been assigned to him by Ransorri Amos, but he denies that the assignment was fraudulently or coljusively made in trust for Ransom Amos, hut alleges it to have been bona fide, for a full and valuable consideration paid by him long before Harris, by his contract with Morris, undertook and bound himself to pay the same. He states, that at the time the note was given by Harris, the note of Morris was delivered up, and he at the time had in expectation the purchase of a negro boy from Ran- *565 íom Amos, and admits that he told Harris he would settle the demands which he had against Ransom, if he succeeded in mailing the purchase of the negro. But he alleges that (he negro he had then in contemplation to purchase was afterwards sold by Ransom Amos to another person, and he denies that Harris has any just claim for relief against the note executed by him &c.
H*>to secure by R^A agreed with ’ to become m" owed r. a.; after tA-obligation to J. B. A.-, held jhat H- may payThe & debt on M.to J- A- and against it* his demand against R. A, .
b®inSthus M’Tdebttoxi B. A.,,gave bis obligation g° A promising if ’ be purchased r a be would pay H. his claim onR. A.-.held this agree-dümpactuml and ineffectual.
*565 The bill we think was correctly dismissed. There is no pretext for the charge of fraud and collusion made in the bill, and the evidence is clear, that instead of Morris’ note being assigned by Ransom Amos, intrust for himself, it was purchased by John B. Amos for a valuable consideration, and that purchase known to Hands when he contracted with Morris to discharge it. If therefore, the judgment instead of having been obtained upon the note which was given to John B. Amos, had been recovered upon the written assurance which Harris gave to Morris to pay the three hundred dollar note, which had been assigned to said John B. Amos, it is obvious tiratas against the assignee, Harris could have no good cause of relief, and it is not perceived how his case can have been bettered by the taking up Morris’ note, and executing his own note directly to. John B. Amos. His case undoubtedly cannot be bettered on account of any claim for relief asserted through any matter existing prior to the execution of the note upon which the judgment at law was recovered.
But it appears (hat by the agreement of the parties when the note was given, Harris was to have his debts on Ransom Amos satisfied by John B. Amos, provided the latter should thereafter purchase from Ransom Amos a negro boy, and it is contended that the boy was accordingly purchased by John B. Amos, and under that agreement and purchase it was insisted relief should have been decreed in faVor of Harris.
. , , Admitting the premises to he true, the conclusion does not however follow asa necessary consequence. For if it be true as we have attempted already to prove, that before the note was executed by. Harris *566 to John B. Amos, the former, was under a moral and equitable obligation to pay the demand of the latter, it is not discerned how that obligation can have been impaired or relaxed by the voluntary assurance given by J. B. Amos, that the debts of Harris on Ransom would be paid on the event of the negro being purchased. If the negro had been in fact purchased, and John B. Amos had received a credit in the price for the amount of Harris’ debts, there would have been much propriety in compelling John B. Amos to apply the credits so received, in satisfaction of the judgment against Harris, but it is not pretended that the full price of the negro which he purchased was not paid to Ransom Amos, nor is it conceived how, in making the purchase, he could have compelled Ransom Amos to allow the debts due by him to Harris, to go in part satisfaction of the price. The promise of J. B. Amos predicated upon the future purchase of the negro, cannot be viewed in any other light than a mere nvdum pactum. It was induced by no valuable consideration. He received nothing as a consideration to which he was not previously entitled; Harris paid nothing, and came under no obligation to pay any thing that he was not previously bound to pay. There was neither benefit to the one, nor loss or prejudice to the other.
Crittenden and Monroe, for appellant^.Mayes, for appellees.
The decree is affirmed with damages on the damages decreed in the court below. The appellant is to pay cost in this court.